UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
LOUIS IDROBO,                                                           :
                                                                        :
                                        Plaintiff,                      :
                                                                        :                23-CV-9999 (JMF)
                  -v-                                                    :
                                                                        :                OPINION AND ORDER
MICROSOFT et al,                                                        :
                                                                        :
                                        Defendant.                      :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Louis Idrobo, a Latino man, was employed by Securitas, a company whose

clients included the Microsoft Corporation ("Microsoft"). Proceeding without counsel, Idrobo

initially brought claims against Microsoft and a host of media companies, which the Court

dismissed in a prior Opinion, albeit with leave to file an amended complaint against Microsoft

alone. *See Idrobo v. Microsoft*, No. 23-CV-9999 (JMF), 2025 WL 662697 (S.D.N.Y. Feb. 28,

2025) (ECF No. 81). Thereafter, still proceeding without counsel, Idrobo filed the operative

Second Amended Complaint, which alleges claims against Microsoft for discrimination and

retaliation under the New York City Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE

§ 8-101 *et seq.*, as well as claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*

*See* ECF No. 86 ("SAC"). Microsoft now moves, pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, to dismiss Idrobo's Second Amended Complaint. For the reasons that

follow, the motion is GRANTED as to Idrobo's FCA claims but otherwise DENIED.

## PROCEDURAL BACKGROUND

This lawsuit began with a complaint, filed on November 13, 2023, against Microsoft and

various media companies alleging claims under the First Amendment, the Racketeer Influenced

and Corrupt Organizations Act, and New York state law, including the NYCHRL. *See* ECF No. 1. Defendants moved to dismiss, Idrobo filed an amended complaint, and Defendants again moved to dismiss. *See* ECF Nos. 41, 44, 52, 62, 65. By Opinion and Order entered on February 28, 2025, the Court granted Defendants' motions and dismissed all of Idrobo's claims. *See Idrobo*, 2025 WL 662697, at *3. The Court did not address the merits of Idrobo's claims against Microsoft, which were brought only under New York law. *See id.* at *2-3. Instead, observing that Idrobo had alleged only federal question jurisdiction in his first two complaints, the Court declined to exercise supplemental jurisdiction over the claims against Microsoft. *See id.* at *2. "That said, mindful of Idrobo's *pro se* status" and because there was "a reasonable chance that Idrobo could properly allege diversity jurisdiction pursuant to 28 U.S.C. § 1332," the Court granted him "leave to replead his claims against Microsoft — and Microsoft alone." *Id.* at *3. Thereafter, he filed the Second Amended Complaint, in which he invokes the Court's diversity jurisdiction and alleges claims against Microsoft under the NYCHRL and the FCA. *See* SAC.[1]

## FACTUAL BACKGROUND

The following facts — drawn from the Second Amended Complaint, as well as Idrobo's opposition to Microsoft's motion to dismiss, *see* ECF No. 93 ("Pl.'s Mem."), and sur-reply, *see* ECF No. 98 ("Pl.'s Sur-reply"), to the extent they are consistent with the Second Amended

---

[1] In the Second Amended Complaint, Idrobo alleges diversity jurisdiction on the ground that Microsoft is "incorporated in Delaware and headquartered in Washington State," and he is "a resident of New York State." ECF No. 86 ("SAC"), at 1. Because "a statement of the parties' residence is insufficient to establish their citizenship" for the purposes of diversity jurisdiction, *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996), the Court ordered Idrobo to file a letter attesting to the state of his citizenship, *see* ECF No. 99, at 2. Idrobo's letter in response to that Order alleges that he was "born and raised" in New York City. ECF No. 100, at 1. Because Idrobo proceeds *pro se*, and "[d]omicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change," the Court finds that Idrobo adequately alleges his citizenship for purposes of diversity jurisdiction. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

Complaint — are assumed to be true for purposes of this motion and construed in the light most favorable to Idrobo. *See, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *see also, e.g.*, *Gilani v. Deloitte LLP*, No. 23-CV-4755 (JMF), 2024 WL 4042256, at *2 (S.D.N.Y. Sept. 4, 2024) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in such a plaintiff's opposition memorandum or affidavit, provided that the allegations are consistent with the complaint.").

As noted, Idrobo is a Latino man, SAC 3,[2] who was employed by Securitas, a company whose clients included Microsoft, ECF No. 86-2, at 1. Idrobo alleges that in the summer of 2020, in the wake of national protests after the murder of Geoge Floyd, Microsoft publicly committed to "double the number of Black and African American people managers, senior individual contributors and senior leaders in [its] U.S. workforce by 2025." ECF No. 86-3, at 1; *see also* SAC 2. Idrobo alleges that, around that time, Microsoft began hiring "nearly exclusively black" applicants for numerous open positions. SAC 3. He further alleges that, in April of 2021, he heard a senior Microsoft manager, Kofi O., say to another hiring manager that "the company said we don't need to hire white people, this is for blacks." *Id.* at 7 (internal quotation marks omitted). Idrobo alleges that the second manager replied, "'at least get one' and something like, 'Fast track to corporate.'" *Id.*

At that time, Idrobo was working as a contractor at Microsoft's Fifth Avenue Experience Center, but he was eager to become an employee of Microsoft itself. *Id.* at 3. Idrobo alleges that, to that end, he applied for business sales specialist and customer advisor positions at Microsoft in "June/July of 2020" and again for a customer advisor position from "approximately

---

[2]    References to page numbers in ECF Nos. 86, 93, and 98 are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

3

May to July 2021."  Pl.'s Mem. 3.  Idrobo further alleges that, in September of 2021, when he had not been offered an interview, he spoke with Kofi O., who responded: "[S]orry we are now chocolate Microsoft."  SAC 4 (internal quotation marks omitted).  The senior manager also told Idrobo to "look up the policy and news reports."  *Id.*  Idrobo alleges that he responded: "[B]ut thats [sic] discrimination."  Pl.'s Mem. 7 (internal quotation marks omitted).  Then, as directed, Idrobo "check[ed] the information referenced by the Manager" and learned of Microsoft's commitment to double black management, as well as Microsoft's subsequent assurance to the U.S. Department of Labor that Microsoft's diversity initiative complied fully with all U.S. employment laws.  *Id.*; *see also* SAC 4; ECF No. 86-3, at 1.  Idrobo alleges that he then complained to Kofi O. that Microsoft "told the labor Department there wasn't race based hiring going on."  Pl.'s Mem. 7 (internal quotation marks omitted).  Idrobo alleges that, in retaliation for these complaints, Microsoft transferred him, two months later, to a "far less desirable location" and reduced his wages from approximately $115,000 to approximately $70,000 in total compensation.  SAC 1; *see also id.* at 1-2, 6, 8.  Although Idrobo was a contract worker formally employed by Securitas, he alleges that Microsoft had the power to have him transferred.  *See id.* at 2; *see also* ECF No. 86-2, at 1.  More specifically, Kofi O. was the Microsoft hiring manager with "decision making authority" over Idrobo's employment and transfer.  Pl.'s Sur-reply 1.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Further, if the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.  That said, where, as here, a plaintiff brings claims of employment discrimination, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).  Further, where, as here, a party is proceeding *pro se*, the Court is obliged to construe his pleadings liberally, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis and internal quotation marks omitted).

## DISCUSSION

As noted, Idrobo brings claims under the NYCHRL and the FCA.  The Court need not dwell long on the latter, as it is well established that a *pro se* party may not bring claims under the FCA.  *See, e.g.*, *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008); *Buxbaum v. Walt Disney Co.*, No. 25-CV-02339 (AT) (SDA), 2025 WL 2677050, at *3 (S.D.N.Y. Aug. 26, 2025) (citing cases).  Accordingly, Idrobo's claims under the FCA must be and are dismissed.  Idrobo's claims under the NYCHRL, however, require a more detailed analysis.  The Court will address those claims — for discrimination and retaliation — in turn.

## A. Discrimination

First, Idrobo brings a claim for race-based discrimination under the NYCHRL.  *See* SAC 3.[3]  To evaluate discrimination claims under the NYCHRL, courts apply the familiar three-step, burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Sabic-El-Rayess v. Tchrs. Coll., Columbia Univ.*, 758 F. Supp. 3d 268, 276 (S.D.N.Y. 2024); *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 171 (S.D.N.Y. 2011).  The NYCHRL, however, "explicitly requires an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (App. Div. 2009).  Accordingly, in applying *McDonnell Douglas*, "courts must address the NYCHRL's 'uniquely broad and remedial purposes, which go beyond those of counterpoint State or federal civil rights laws.'" *Williams*, 836 F. Supp. 2d at 171 (quoting *Williams,* 872 N.Y.S.2d at 31).  To explain what is required by the NYCHRL, then, it is useful to explain what is required by Title VII — the "counterpoint . . . federal civil rights law[]" from which the NYCHRL is distinguished.  *Id.* (internal quotation marks omitted).

At the motion-to-dismiss stage, only the first step of the *McDonnell Douglas* framework — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue.  *See Littlejohn*, 795 F.3d at 311.  To establish a *prima facie* case of discrimination under Title VII, a plaintiff must allege that: (1) he was a member of a protected class; (2) he was competent to perform the job in question or was performing the duties satisfactorily; (3) he suffered a

---

[3]     Idrobo alleges variously that he was discriminated against on the bases of "race," "ethnicity," and "national identity."  SAC 1.  Because his central argument is that Microsoft discriminated against applicants who were not Black through its "racist hiring plan based on skin color," *id.*, the Court construes his discrimination claim to be one for *race-based* discrimination.

materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination.  *See, e.g.*, *Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 155 n.4 (S.D.N.Y. 2022).  NYCHRL requires the same, except that the adverse action need not be "material"; instead, a plaintiff need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty."  *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Williams*, 836 F. Supp. 2d at 173).  Thus, a NYCHRL plaintiff must still allege facts supporting an inference of discrimination.  *See Williams*, 836 F. Supp. 2d at 173, 177.  More specifically, to survive a motion to dismiss claims under the NYCHRL, the facts alleged must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn*, 795 F.3d at 311.  "[T]he burden of establishing a *prima faci*[e] case is 'minimal.'"  *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

Here, there is no dispute that Idrobo alleges facts sufficient to satisfy the first two prongs of the *prima facie* test for discrimination.  Instead, Microsoft contends that Idrobo fails to satisfy the third and fourth prongs.  *See* ECF No. 90 ("Def.'s Mem."), at 5-12.[4]  With respect to the third, Microsoft contends that Idrobo fails to allege a specific position for which he applied and was rejected.  *See* Def.'s Mem. 5, 8.  But Idrobo specifically alleges that he applied for the positions of "Business Sales Specialist and Customer Advisor."  SAC 7.  And in his opposition to Microsoft's motion to dismiss, Idrobo further specifies that he applied for the business sales

---

[4]    Microsoft originally argued also that Idrobo "fails to allege a specific position *within the statute of limitations*."  ECF No. 90 ("Def.'s Mem."), at 7 (emphasis added).  In its reply, however, Microsoft conceded that Idrobo's claims "are not time-barred." ECF No. 94 ("Def.'s Reply"), at 1 n.2.

specialist and customer advisor positions in "June/July of 2020" and again for a customer advisor position from "approximately May to July 2021," Pl.'s Mem. 3, allegations that the Court may consider given Idrobo's *pro se* status.  Having specified both the positions he applied for and the times at which he applied for them, Idrobo plainly meets the mandate of *McDonnell Douglas*'s third prong — to "ensure[] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998); *see, e.g.*, *Singh v. Excel Sec. Corp.*, No. 14-CV-10111 (PAC), 2021 WL 1199469, at *8 (S.D.N.Y. Mar. 30, 2021) (holding that a failure to hire is an adverse employment action).

In the alternative, Microsoft argues that Idrobo does not adequately allege that Microsoft failed to hire him under circumstances that give rise to an inference of discrimination.  *See* Def.'s Mem. 8-12.  But drawing all inferences in Idrobo's favor, the Court once again disagrees.  A discriminatory motive can be shown "by pleading direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic." *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4558 (JMF), 2021 WL 5179914, at *5 (S.D.N.Y. Nov. 8, 2021) (quoting *Ibrahim v. Fid. Brokerage Servs. LLC*, No. 19-CV-3821 (VEC), 2020 WL 107104, at *5 (S.D.N.Y. Jan. 9, 2020)); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004) ("[E]vidence of discriminatory comments . . . can constitute 'direct evidence,' and are adequate to make out a prima facie case [of discrimination] . . . .").  Here, Idrobo does just that.  He alleges that, in April 2021, one month before he applied to work at Microsoft, he heard a senior Microsoft manager, Kofi O., say to another hiring manager that "the company said we don't need to hire white people, this is for blacks." SAC 7 (internal quotation marks omitted).  The second manager replied, "'at least get one' and something like, 'Fast track

8

to corporate.'" *Id.* Idrobo further alleges that, in September 2021, when he inquired about his job application, Kofi O. responded, "sorry we are now chocolate Microsoft." *Id.* at 4 (internal quotation marks omitted). The senior manager also told Idrobo to "look up the policy and news reports," which, after checking the news, Idrobo understood to refer to Microsoft's 2020 public commitment to double black management by 2025. *Id.* Taken together and read in the light most favorable to Idrobo, these allegations of overtly race-based comments made by Microsoft hiring managers in the context of hiring decisions satisfy Idrobo's burden to plead sufficient facts to "show that [his] employer treated [him] less well, at least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013); *see Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578 (AJN) (SDA), 2020 WL 3181785, at *11 (S.D.N.Y. June 15, 2020) (holding that a single comment that the plaintiff was an "expendable Indian" at a time when he was being removed from a project was sufficient to state a NYCHRL discrimination claim (internal quotation marks omitted)); *see also, e.g.*, *Tomassi v. Insignia Fin. Grp.*, Inc., 478 F.3d 111, 115 (2d Cir. 2007) ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative [of the defendant's discriminatory intent] that remark will be."), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009).

Microsoft argues that these allegations do not suffice because they qualify as mere "petty slights and trivial inconveniences," Def.'s Mem. 9 (internal quotation marks omitted), but its argument is premised on a misunderstanding of the law. Whether a defendant's conduct rises above "petty slights and trivial inconveniences" generally speaks to whether the plaintiff has alleged an adverse employment action (i.e., the third prong of the *prima facie* test) not to whether an adverse employment action occurred under circumstances that give rise to an inference of

discrimination (i.e., the fourth prong).  Thus, for example, a hostile work environment claim falls

short if the plaintiff fails to allege anything more than "petty slights and trivial inconveniences,"

as was the case in *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450-53 (E.D.N.Y.

2013), and *Bautista v. Gramercy*, 642 F. Supp. 3d 411, 427-28 (S.D.N.Y. 2022), two of the three

decisions upon which Microsoft relies for this point, *see* Def.'s Mem. 9-10.[5]  But where, as here,

a plaintiff alleges a concrete adverse employment action such as a failure to hire (or termination),

the law is clear that the plaintiff can satisfy his burden to prove discriminatory intent with

discrimination-related remarks even if those remarks are, on their own, "inoffensive."  *Tomassi*,

478 F.3d at 116 ("The relevance of discrimination-related remarks does not depend on their

offensiveness, but rather on their tendency to show that the decision-maker was motivated by

assumptions or attitudes relating to the protected class.  Inoffensive remarks may strongly

suggest that discrimination motivated a particular employment action.").[6]

In sum, Microsoft's motion to dismiss Idrobo's race-based discrimination claim under the

NYCHRL must be and is denied.

---

[5]    The third decision cited by Microsoft — *Baptiste v. City University of New York*, 680 F. Supp. 3d 415 (S.D.N.Y. 2023) — is wholly irrelevant.  The phrases "petty slights" and "trivial inconveniences" appear nowhere in the opinion.

[6]    Microsoft's "petty slights and trivial inconveniences" argument may suffer from another problem as well.  To establish a discrimination claim under the NYCHRL, a plaintiff "need only show differential treatment — that [he] is treated 'less well' — because of a discriminatory intent."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (App. Div. 2009)).  If the plaintiff does so, "defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider "petty slights and trivial inconveniences."'"  *Id.* at 111 (quoting *Williams*, 872 N.Y.S.2d at 41).  Under the NYCHRL, therefore, "petty slights and trivial inconveniences" are an affirmative defense.  And it is well established that a plaintiff need not plead around an affirmative defense.  Instead, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion only "if the defense appears on the face of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

### B. Retaliation

Idrobo's final claim is for retaliation under the NYCHRL. *See* SAC 6. As with NYCHRL discrimination claims, courts apply the *McDonnell Douglas* burden-shifting framework to NYCHRL retaliation claims. *See, e.g.*, *Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 297, 302 (S.D.N.Y. 2022); *Williams*, 836 F. Supp. 2d at 171. A *prima facie* case of retaliation under the NYCHRL consists of a showing by the plaintiff that: "1) he engaged in a protected activity; 2) his employer was aware of that activity; 3) he suffered an action that would be reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a causal connection between the protected activity and the action." *Ardigo v. J. Christopher Cap., LLC*, No. 12-CV-3627 (JMF), 2013 WL 1195117, at *5 (S.D.N.Y. Mar. 25, 2013) (internal quotation marks omitted). Here too, "[t]he plaintiff's burden of proof at the *prima facie* stage is *de minimis*." *Harding*, 635 F. Supp. at 302.

Idrobo's retaliation claim meets these standards. Idrobo engaged in a protected activity, of which Microsoft was aware, when he complained to a Microsoft hiring manager about the company's discriminatory hiring practices. *See* Pl.'s Mem. 7. His subsequent transfer to a less favorable position, *see* SAC 1-2, 6, 8, constitutes an action reasonably likely to deter a person from engaging in a protected activity, and the timing of the transfer — only two months after his protected activity — establishes a plausible causal connection between the protected activity and the action. Further, although Idrobo was formally employed by Securitas, not Microsoft, the latter faces potential liability under the joint employer doctrine, which provides that "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive

11

employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *see, e.g.*, *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) ("The joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities; it has also been applied to contractors and subcontractors and other scenarios where two separate entities have control over an employee's employment."), *aff'd sub nom.*, *Lima v. Adecco and/or Platform Learning, Inc.*, 375 F. App'x 54 (2d Cir. 2010) (summary order).

In arguing otherwise, Microsoft's primary contention is that Idrobo fails to "adequately allege what Plaintiff complained of, whom Plaintiff complained to, or when Plaintiff made any alleged complaint," thus failing to "adequately allege that Plaintiff took any [protected] action that could serve as the basis for an NYCHRL retaliation claim." Def.'s Mem 13. But Idrobo explicitly alleges that, in September 2021, after inquiring about his job applications and receiving the "chocolate Microsoft" response from Kofi O., the hiring manager, he replied, "but thats [sic] discrimination." Pl.'s Mem. 7 (internal quotation marks omitted). Shortly thereafter, Idrobo read about Microsoft's commitment to doubling black management, as well as Microsoft's subsequent assurance to the U.S. Department of Labor that Microsoft's diversity initiative complied fully with all U.S. employment laws, and he complained again to Kofi O. that Microsoft "told the labor Department there wasn't race based hiring going on." *Id.* (internal quotation marks omitted); *see also* ECF No. 86-3, at 1. Thus, before any alleged retaliatory conduct occurred, Idrobo plainly "made clear [his] disapproval of the defendant's discrimination by communicating to [a Microsoft manager], in substance, that [he] thought his treatment of the victim was wrong." *Mihalik*, 715 F.3d at 112 (cleaned up).

In its reply, Microsoft also appears to argue that Idrobo fails to adequately allege a causal connection between his protected activity and the adverse action taken by his employer. *See* ECF No. 94 ("Def.'s Reply"), at 5.[7] It is well established, however, that "issues raised for the first time in a reply brief are generally deemed forfeited." *Doherty v. Bice*, 101 F.4th 169, 175 n.3 (2d Cir. 2024) (cleaned up). In any event, Microsoft's argument fails because Idrobo adequately alleges a causal connection insofar as his transfer occurred within two months of his complaints. *See* SAC 6, 8. The Second Circuit has held that "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (cleaned up); *see, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110-11 (2d Cir. 2010) (explaining that the Second Circuit has "previously held that five months is not too long to find the causal relationship" in the retaliation context); *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time *beyond* two or three months will break the causal inference." (emphasis added)); *Jones v. N.Y.C. Bd. of Educ.*, No. 09-CV-4815 (RWS), 2012 WL 1116906, at *14 (S.D.N.Y. Apr. 2, 2012) ("District courts in this circuit consistently have found that an intervening period of *more* than two to three months is insufficient to establish a causal connection through temporal proximity alone." (emphasis added)).

In short, "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff," *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d

---

[7] Microsoft makes one lone reference to the "cause-and-effect sequence" in its original memorandum of law, but it is buried in a parenthetical explaining a case that it cited to support its argument regarding the protected activity prong. *See* Def.'s Mem. 13.

Cir. 2018) (internal quotation marks omitted), the Court concludes that Idrobo's retaliation claim under the NYCHRL survives.[8]

**CONCLUSION**

For the foregoing reasons, Microsoft's motion to dismiss is GRANTED with respect to Idrobo's FCA claims but otherwise DENIED.  The Court declines to *sua sponte* grant Idrobo leave to amend yet again to revive his FCA claims because amendment, given that Idrobo remains *pro se*, would plainly be futile.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

---

[8]    Idrobo's Second Amended Complaint makes two passing references to N.Y. Labor Law Section 740, *see* SAC 5, which, as amended effective January 26, 2022, provides that

> [a]n employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety.

N.Y. LAB. LAW § 740(2)(a); *see Accettola v. He*, No. 23-CV-1983 (LJL), 2025 WL 843412, at *7 (S.D.N.Y. Mar. 18, 2025).  The 2021 amendment also increased the statute of limitations for a claim under Section 740 from one to two years.  *See Flaherty v. Dixon*, No. 22-CV-2642 (LGS), 2023 WL 2051861, at *9 n.2 (S.D.N.Y. Feb. 16, 2023).  The Court, however, does not construe Idrobo to plead a claim under Section 740 because, among other things, he makes no mention of the provision in his opposition to Microsoft's motion or his sur-reply.  In any event, any such a claim might well be time barred, as the amendment to Section 740 to extend the statute of limitations from one to two years likely would not apply to Idrobo's claim, which accrued before the effective date of the amendment.  *See, e.g.*, *Flaherty*, 2023 WL 2051861, at *9 n.2 (citing *Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 989-92 (N.Y. 2020)); *see also Accettola*, 2025 WL 843412, at *7-10 (holding more broadly that the 2022 amendment does not apply retroactively but noting division among district courts).

Unless and until the Court orders otherwise, Microsoft shall answer Idrobo's remaining claims **within three weeks of the date of this Opinion and Order.** By separate Order, the Court will schedule an initial pretrial conference as to the remaining claims.

The Clerk of Court is directed to terminate ECF No. 89.

SO ORDERED.

Dated: December 16, 2025
      New York, New York

                  JESSE M. FURMAN
              United States District Judge